## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

CHELSEA FOSTER, Administratrix of the Estate of
JOSHUA OWEN STEWART,

                    Plaintiff,

v.                                      CIVIL ACTION NO.   3:16-4101

MOIRA A. TANNENBAUM, CNM, RN,

                    Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Moira A. Tannenbaum's untimely Motion to Dismiss. ECF No. 8. Tannenbaum asserts that Plaintiff Chelsea Foster did not comply with West Virginia's pre-filing requirements for medical malpractice cases and therefore the case should be dismissed.

Foster brought this medical malpractice case after her son died from complications during child birth in July 2015. Foster alleges that Tannenbaum, a registered nurse midwife, breached the standard of care when delivering her son. For the following reasons the Court **DENIES** the Motion to Dismiss.

### I.      Factual Background

In West Virginia a plaintiff bringing a medical malpractice suit must comply with certain pre-suit filing requirements. West Virginia Code 55-7B-6 requires that a plaintiff "serve by certified mail, return receipt requested" a notice of claim on each healthcare provider that will be joined in litigation at least thirty days before a suit is filed. The notice must "include a statement

of the theory . . . of liability upon which a cause of action may be based" and a "screening certificate of merit." W. Va. Code § 55-7B-6. The screening certificate of merit must be completed by a healthcare expert and state the following: (1) The expert's familiarity with the applicable standard of care; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach resulted in injury or death. *Id.*

On March 15, 2016, Foster attempted to serve Tannenbaum via certified mail with the notice of claim and a certificate of merit at a Hurricane, West Virginia address found on the "Find a Doctor" website curated by the Charleston Area Medical Center. The return receipt stated that the mail was unclaimed and could not be forwarded. As it happens, the address to which the notice was sent was the address of a medical practice for which Tannenbaum worked in 2014. Tannenbaum was employed by a different medical center at the time of the charged events.

On April 16, 2016, Foster mailed the notice to Tannenbaum's counsel. On April 28, 2016, Plaintiff's counsel phoned Defendant's counsel to confirm that the Hurricane address was the proper address for Tannenbaum. Plaintiff's counsel affirms in an affidavit that Defendant's counsel confirmed that the address was valid. Defendant's counsel disputes the veracity of Plaintiff's counsel's representation of the phone conversation. Defendant's counsel maintains that she informed Plaintiff's counsel that Tannenbaum was moving to Ann Arbor, Michigan and that Tannenbaum may have practiced at the Hurricane address sometime in the past.

Nonetheless, on May 11, 2016, Tannenbaum was served with a summons and complaint in this action at her residence in Michigan. It is not clear from the briefing when or how Foster became aware of Tannenbaum's residential address in Michigan.

## II.       Procedural Background

Foster filed this suit on May 2, 2016. Tannenbaum received service of the summons and complaint on May 11, 2016. The Federal Rules of Civil Procedure permits the defendant twenty-one days to file a responsive pleading from the day he or she is served. Fed. R. Civ. P. 12(1)(a)(i). Tannenbaum filed her responsive pleading, the Motion to Dismiss, twenty-six days after she was served. Tannenbaum did not include a motion for leave of court to file out of time with her Motion to Dismiss. On the same day Tannenbaum filed her Motion to Dismiss, Foster filed a Motion for Default Judgment. The Court denied the motion because Foster did not follow the proper procedure for entering default against a defendant. *See* Fed. R. Civ. P. 55. Rule 55(a) of the Federal Rules of Civil Procedure requires that the moving party move for and secure an entry of default *before* a default judgment can be entered. *Id.*

## III.       Discussion

A.  *Considering the Late-Filed Motion*

"When an act . . . must be done within a specified time, the court may, for good cause, extend the time *on motion made* after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B) (emphasis added). "Unless another time is specified . . . the time for serving a responsive pleading is within 21 days after being served with the summons and complaint." Fed R. Civ. P. 12(a)(1)(A)(i).

Tannenbaum filed her Motion to Dismiss without an accompanying request to file out of time nor did she attempt to make the showing of excusable neglect that is required by the Federal Rules for a court to consider late filings. Tannenbaum amazingly believes that this Court's Order denying entry of default judgment permitted Tannenbaum to file her Motion late. The Court would like to disabuse the Defendant of that notion. The effect of the Court's Order was, as is plainly

stated in the Order, to deny entry of default judgment because it was procedurally improper. A defendant must first be found in default *before* a court can enter default judgment against the defendant. *See id.* Thus, a motion for default judgment before default has been entered is improper. *Id.* The Court made no ruling concerning Tannenbaum's Motion to Dismiss. Moreover, Tannenbaum filed her Motion two days before the Court ruled on Plaintiff's Motion. Tannenbaum, at the time of filing, could not have misinterpreted an order that did not yet exist to permit her to file her Motion late. The Court is under no obligation to consider the Motion to Dismiss since Tannenbaum has utterly failed to make the barest showing that her obvious neglect was excusable.

Notwithstanding, the Fourth Circuit strongly favors the resolution of cases on the merits and not on technical procedural grounds. *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). Where no prejudice results from the belated filing courts are wont to consider it. *See, e.g.*, *United States v. Mraz*, 274 F.Supp.2d 750, 755–56 (D. Md. 2003) (court refused to enter default judgment against defendant who answered three weeks late citing no prejudice done to the government and the general preference to resolve cases on their merits).

Refusing to consider the Motion to Dismiss would permit Foster to seek default and default judgment, avoiding a resolution on the merits—an outcome this Court will not sanction. *See Malla v. Rajamani*, No. 1:08-cv-1319, 2009 WL 928689, at *1 (E.D. Va. Apr. 1, 2009). Moreover, Court does not believe any prejudice befell Foster as a result of the late-filed Motion. The Court, however, strongly encourages Defendant to observe applicable Federal Rules, and where it cannot, request leave of court. Accordingly, the Court will consider the Motion to Dismiss.

B. *The Merits of the Motion to Dismiss*

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court follows a two-step approach: (1) "begin by identifying pleadings that, because they are no more than conclusions,

are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and then (2) "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

For the second step, a court must take the remaining factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555–56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

Tannenbaum's Motion to Dismiss contends that Foster failed to comply with West Virginia's pre-filing requirements for medical malpractice suits in two ways: (1) Tannenbaum never received the proper notice of the impending suit; and (2) the screening notice is defective in a number of ways, and therefore the suit should be dismissed. The Court will only address Tannenbaum's first argument, the resolution of which will resolve the Motion to Dismiss.

The West Virginia Supreme Court of Appeals has explained the purpose of West Virginia's pre-filing requirements as twofold: "to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and to promote the pre-suit resolution of non-frivolous medical malpractice claims." *Hinchman v. Gillette*, 618 S.E.2d 387, 394 (W. Va. 2005). Of particular note, the Supreme Court of Appeals held "[t]he requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts." *Id.* The Court further instructed courts that when determining whether a notice is legally sufficient, "a principal consideration . . . should be whether a party . . . defending the sufficiency of a notice . . . has demonstrated a good faith and reasonable effort to further the statutory purpose." *Id.* at 395.

The Supreme Court of Appeals has not had an occasion to rule on a case that presents the same factual scenario as the parties present to the Court here. Nonetheless, the Supreme Court of Appeals' decision in *Elmore v. Triad Hospitals Inc.*, 640 S.E.2d 217 (W. Va. 2006) (per curiam), is instructive. There, a plaintiff bringing a medical malpractice claim mailed the notice and screening certificate to one of the defendant's workplaces. *Id.* at 219. Another employee signed for the papers and they were placed in the internal delivery system to be delivered to the defendant's workplace mailbox. *Id.* The defendant did not receive the notice and screening certificate for five days because he was working at another location. *Id.* The plaintiff filed the case thirty-one days after the notice was mailed. *Id.* The defendant finally received the papers twenty-five days before suit was filed. *Id.*

The Supreme Court of Appeals explained that the West Virginia Legislature intended for the healthcare provider to be given thirty days to evaluate the claim and determine whether to invoke pre-suit mediation. *Id.* at 224. It went on to hold that in light of its decision in *Hinchman* warning courts not to use the notice requirements to deny access to the courts, the trial court should

-6-

not have dismissed the case. *Id.* Rather, the trial court should have stayed the case and permitted the parties the choice to mediate the claim before the case proceeded in court in order to honor the pre-suit requirements. *Id.*

There are, of course, differences between *Elmore* and this case. In *Elmore* the defendant received notice, albeit only twenty-five days, or so, before suit was filed. *Id.* at 219. Here, it appears that Tannenbaum did not receive notice until the suit was filed, completely obviating the purpose of the pre-filing requirements. Yet, the Court believes that Foster made a reasonable effort to further the statutory purpose. The address to which she sent the notice was, at one time, a proper address for Tannenbaum. Foster also attempted to serve Tannenbaum through her counsel but her counsel would not accept it. Tannenbaum's counsel was not obligated to accept service of the notice, but Foster's attempt to provide the notice to Tannenbaum through her counsel shows a reasonable effort to further the statutory purpose, as does her attempt to provide Tannenbaum the notice at the Hurricane address.

As important to this Court's decision to deny the Motion to Dismiss is the Fourth Circuit's preference for cases to be decided on the merits. *Shaffer*, 11 F.3d at 453. The sentiment is equaled by the West Virginia courts. *Westmoreland v. Vaidya*, 664 S.E.2d 90, 97 (W. Va. 2008) (quoting *Dimon v. Mansy*, 479 S.E.2d 339, 344–45 (W. Va. 1996)). In furtherance of this preference the Supreme Court of Appeals has created a presumption that assumes that when a medical malpractice case is dismissed for a failure to comply with 55-7B-6 the dismissal is without prejudice unless specifically stated otherwise. *Davis v. Mound View Health Care, Inc.*, 640 S.E.2d 91, 95 (W. Va. 2006). The purpose the Court explained was to ensure that 55-7B-6 did not deny plaintiffs access to the courts for simple procedural defects. *Id.*

Were this Court to grant the Motion to Dismiss, the Court would be inclined to grant it without prejudice as the procedural defect can be easily cured. And, the statute of limitations will not bar Foster's claim until July 2017. *See* W. Va. Code § 55-7B-4 (statute of limitations for medical malpractice claim is two years). Consequently, the dismissal would accomplish nothing except to waste the time and resources of both parties.

As a result, the Court believes the most equitable result of Tannenbaum's unpunctual Motion to Dismiss is to deny the motion and stay the case such that Tannenbaum may have thirty days to consider the claims against her and to invoke mediation if desired. This outcome respects the purposes of section 55-7B-6, while ensuring that the law does not arbitrarily deny plaintiffs access to the courthouse.

The Court also denies without prejudice Tannenbaum's contention that Foster's screening certificate of merit does not comply with West Virginia law. The Supreme Court of Appeals in *Hinchman v. Gillette* determined that during the thirty-day waiting period between service of the notice and screening certificate and filing the case, the defendant may inform the plaintiff of any objections to the legal sufficiency of the notice and certificate. 618 S.E.2d at 395. The plaintiff is then given a reasonable amount of time, not to exceed thirty days, to respond to the defendant's objections. *Id.* The defendant's objections to the notice and certificate are thus preserved for court review if the parties cannot resolve their differences. *Id.* The stay in the case will permit the parties to engage in this dialogue, and if the parties cannot settle the case or even resolve their differences about the sufficiency of the notice and certificate, Tannenbaum may renew her motion to dismiss attacking the legal sufficiency of the notice, and the parties may otherwise continue this litigation.

### IV.   Conclusion

The Court **DENIES** the portion of the Motion to Dismiss, ECF No. 8, based on Plaintiff's service of the notice of claim and screening certificate of merit **WITH PREJUDICE**. The Court **DENIES** the portion of the Motion to Dismiss, ECF No. 8, based on the legal sufficiency of the notice of claim and screening certificate of merit **WITHOUT PREJUDICE**. The Court further **STAYS** the case for up to sixty days to permit Defendant time to evaluate the claims against her, invoke mediation, or object to the legal sufficiency of the notice of claim and screening certificate of merit. The parties shall inform the Court of the status of the case at the end of thirty days. At the conclusion of sixty days the parties shall make the proper motion to either dismiss the case, resume it, or request an additional stay. The stay will commence on **January 1, 2017**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        December 20, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE